District. I believe we're ready to proceed in the first case, Kimble v. Kingston City School District. Thank you, Your Honors, and may it please the Court. Michael Sussman, Fugosia, New York. You're arguing on behalf of Mr. Kimble. As the Court knows the facts, I won't dwell upon them. I will get to the errors that we assign to the District Court decision. First, plaintiff's motive is not decisive or determinative as to whether the speech touches a matter of public concern. This Court has said that very clearly in Sousa and Gladner, 2009 and 2014 case. But his claim was clearly directed towards his concerns about his child, right? His complaint is about bullying with regard to his child, which is a matter of public concern. But you're correct. It is about his child. I certainly agree with you that it's a matter of public concern, but his complaint and his direct his communication with the school district was relevant to the specific instance with regard to his child, not a broader failing of the school district in general with regard to bullying, correct? That's correct. However, the case, had it been preceded, as it is proceeding, does implicate broader issues, because the way the district dealt with his child and the negligence that they displayed obviously relates to matters of policy with the school district. But you're correct. Sadly, I couldn't agree with you more, but sadly, every shortcoming with regard to understanding a problem has its broader policy implications within society. But that doesn't necessarily make it a matter of public concern in the context of the claim raised by the individual whose life is caught up in the shortcoming by the school district itself. Well, I think that's where the case law is interesting. And I think that if you study, as I'm sure you have, the Sousa and Gladner cases, what you're dealing with there were, in one case, Sousa, complaints there by an employee about workplace violence dictated toward that employee, which the Court did find to raise matters of public concern. In Gladner, likewise, the complaints were about the individual and how the individual was treated by local police authorities, which was deemed to raise a matter of public concern. The distinction which has been drawn, and I think the important distinction, is in the Ezekiel case, my case from almost 30 years ago, and other like cases where you're dealing with an employee. Mr. Sussman, you can't be that old. I'm older than that, older than 30. Anyway, I've been doing this for 35 years before you all. In any event, the issue that I'm trying to focus on and the line this Court has drawn, and as the Court has acknowledged in its cases, the line has not been exact and it's been veering, one might say, without being uncomplimentary to the Court. The line that seems to be drawn is individuals who are complaining about employment-related matters that pertain to them and seeking a remedy personal to them in the employment context. Those cases, like Rotolo specifically, have been viewed as different from Connick. Connick, you had an individual who was plainly self-interested. That's a Supreme Court case. But she, in her questionnaire, raised one matter which was viewed as touching on a matter of public importance which saved her First Amendment claim. Here, the subject matter of the action, like in Sousa, is one which implicates a matter of public concern, and that is sufficient, I believe, under your case law, to fall within the First Amendment jurisprudence and protection. Roberts, this would be, I understand your point, but I think this would be the first case, correct me if I'm wrong, where in, for example, the notice of claim, there was no reference to any policy, any other students. It was literally just about the child, the one child. This would be, I think, the first case where we have said that even though it only involves one child or one person, it's a matter of public concern. Well, the place where I disagree is where you try to draw the distinction in terms of not being about policy, because clearly what was stated in the notice of claim is that despite the complaints of the parent, who also happened to be an employee, the district negligently responded, it's true, with regard to that matter, but that does implicate a question of broader policy. And I think that's where these distinctions get a little bit muddled. It's the — you have to be dealing, as I tried to explain in my answer to Judge Wesley, you have to be dealing with something beyond just my child was bullied by another student. You're dealing, in order to have a notice of claim and a viable State claim, with a contention that the district has done something wrong in light of DASA and other State policies, which are particularly — DASA, as you know, is a new, rather new State policy intended to extirpate this from school districts. So I think that it does necessarily implicate something broader. And that's why I believe that the precedent — Help me to understand. Would that mean that any bullying — any complaint about my child has been bullied would fall within — would sufficiently — I believe that's accurate. I think any complaint which raises a matter — I mean, that's the same to me as looking at some of the cases which deal with expressions about racial discrimination in a school district. Someone says that there's racial discrimination in a school district, and they're not talking about their own specific employment circumstance. They're talking about a policy here, I believe implicit in the notice of claim, is that there is a policy in the school district which is not dealing with the issue of bullying. He's not saying his child's being singled out because he's a parent who happens to work in the school. He's making an argument that they negligently dealt with the issue. And I think that would implicate necessarily discovery on broader issues. I mean, to follow up on Judge Mingus's question, then any time you have a complaint of discrimination or some other type of activity that is of public interest, and you're — but you're particularizing it to the fact that you're upset with what happened to your child, notwithstanding the fact that you're only talking about your child, that becomes a public interest? Yes. Because you don't — look, an individual doesn't generally have standing. Well, let me — let's take this a bit further. Sure. Mr. Kimball sued on behalf of his child. He did. And I was hoping we'd get to that. I don't want — so if you want to keep going down this road, we can. But so his — he sued on behalf of his child. The allegations that he makes in that notice of claim you also say are a matter of public concern? Absolutely. Okay. Absolutely. Look — Well, can we talk about the notice of claim for a second? Sure. Because the Court said that that was his speech and not his child's speech. You disagree? Well, we disagree for this reason. Did he raise — let me ask you this. He had — under New York law, a parent has a derivative claim with regard to injuries to their children for the expenses that they incur with regard to the — to the injuries that they pay for the child, right? Yes. He didn't raise a derivative claim, did he, in his notice of claim? No. Did the — we don't see this in the record, but did — so I — was there ultimately a lawsuit? Yes, Your Honor. Did he seek derivative — a derivative cause of action? No. He was representing his child. That's — that was the point we made on the associational claim. No. Your view is that the district court made a legal error when it said that it was his speech and not his son's speech. What we — yes. To answer your question directly, yes. What we're claiming is — But his son was incapable — His son is incapable, juridically. The caption of the notice of claim is, Kimball on behalf of his child. Which is how it had to be, because his son does not have the capacity to speak, if you will, in that forum. But given that his son doesn't have the capacity to speak, the claim is essentially his son's speech. It's his son's — it's his son's experience. He's trying to vindicate — I'm not disagreeing with you. I'm just trying to explain it. I'm sorry. You know how — Let me — let me ask one more question, because I'm interested in this. Go ahead. I'm interested in all the cases that we have, but I'm interested in this in particular. You referred to him as an employee. He's really an employee of the town as a — when he's working in the school district. You're correct. During the day, right? Yes, sir. Is it your view that — and he had put in to become a security officer? Yes. The security officer is people who do security, like at football games and other sporting activities? It's actually full-time employment in the school district, by the school district, in that capacity. It's a title, civil service title, school district act. He had not been hired yet as such, correct? Yes, sir. Wouldn't this require us to extend Adler? Because Adler — if we were to say that there's a potential intimate association claim because we disagreed about the notice of claim issue that I raised with you, wouldn't we have to extend Adler and all the other cases that we've written on are about terminations from existing positions, right? Yes. But I think that's — So you're saying that he has — that this right would extend to his right to be hired? Absolutely. In this circumstance, absolutely, because it seems — I mean, at least, again, we're on a motion-to-dismiss stage, so we're — No, I understand — — understanding that procedural point. But given that — where we are at that stage, the evidence, at least as we see it, is that he would have been hired for that position. He's being fingerprinted. He's submitted his paperwork. He'd gone enough through the process that's made clear that the only reason he wasn't hired was because of this association. So I don't think that's any great leap. In your view, at least there might be an issue of fact about that. Well, certainly on the motion-to-dismiss, it's pled that way, and I believe you'd have to accept that as true. Thank you. Can I just ask one other question? Absolutely. Can you address the municipal policy or custom and how that's pled in the complaint? Well, again, I think that's sort of a funny issue here. I mean, the district, Quad District, is the defendant, and the district is the entity through its school board, which took all of these actions that we allege, that is, that they refused to hire him because of the association with his son, and then they said to the town, get him out of here, to simplify it. So there's no question here that this wasn't the policy of the district. It was the school district which did this. I mean, it's not — it's not a — But you don't give us any facts or circumstances other than that ultimately the defendant did it. And it would be consistent — and I'm just trying to understand your — it would be consistent if some low-level employee had removed his name from the list, thinking he really shouldn't be working in this school, given the situation with his son? So I'm just asking, why is that enough in this case? Well, again, the facts don't allege that a low-level employee did this. The facts allege that he received notification — Well, no, he received notification from the school district in the form of a letter that he was being — he was being disallowed from these positions because of this association. In other words, there was a policy-level decision made which asserted that was a sufficient basis to disqualify him. And I believe that's sufficient. The Court — You're saying it's the messenger that — it's the messenger that elevates it to the — I'm saying it's a matter of — I'm just trying to understand your argument. My argument is that it was a matter of policy taken at a level beyond Mr. Parker, who's the only individual named. Mr. Parker was the messenger who was saying to him, your application is up to the school board to see what they're going to do with it. That's what the complaint alleges. And then the word back was, we can't put you on the schedule. That wasn't Parker's decision. So you're saying because of the school board, the assumption is that there's plausible that you've pled that it was the school board that decided, therefore, it becomes a policy. Right. And Parker's the one who was the messenger saying, it's not me. I'm ready to put you on the calendar. I just don't have approval from them. Okay. Them as the decision-makers. Okay. Thank you for your courtesy. Thank you. May it please the Court. My name is Mark Rushfield. I'm appearing here on behalf of the defendant, Depele, Kingston City School District. Judge Scullin, as I see it, in a detailed and well-reasoned decision, addressed the content-forming context issue. Well, I, I, I, beyond frankly, I have a problem with his assertion that it's Kimball's speech. Why isn't it his son's speech and Kimball's just the, the, the medium through which his son speaks because his son is not, doesn't have legal capacity. A, a 12-year-old boy or however old this boy is, he's under 18, doesn't have the capacity to file a complaint. Against the school district or a notice of claim, a child, a parent has to do that. Right. And your Honor's referring to the notice of claim as opposed to the allegations of advocacy. Right. Um, as we see it, your Honor, um, the, he's filing it as a parent on behalf of, uh, for the benefit of his son. He happens to be the father. But, but it's, but the conduct that's being engaged in is his, he's taking the action. That's the. So he should have had his wife file the complaint? Well, that's the exercise of his first amendment right, is his taking that action and making that filing. So it's consistent. It's good. Let's, let's follow this up. Who recovers the money? Uh, in this action? Say he recovers on the claim. In the notice of claim? Yeah. I don't know what, uh, I don't know what claim is made in the litigation. There's a recovery. A, it has to be approved by, if there's a settlement, it has to be approved by the court. B, it has to be paid into a fund and any withdrawals from that has to be approved by the court until the child reaches majority, which time the money goes to the child. This is not the father's money. It's not the father's claim. It's the child's claim. This is only intimate. That's why I asked about the derivative claim. This is the intimate association claim then. Yeah. It's not the petitioning claim. So, but, but the district court said that this was the father's speech and, and, but the, but no one could file a claim other than a parent for this child. Isn't it the child's speech? I think it's a mixer of both. Uh, in this case, even the notice of claim is a little. So you're conceding that it's the child's and someone else's? Well, simply by virtue of the text of the notice of claim, it says it's on behalf of, uh, the student. Consequently, there is a mixture of this, of the student's intimate association with the parent, but I don't see it being, I don't think the issue here is being student speech. You can, you would concede then if, for example, the mother filed the notice of claim that the father would have an intimate association claim, right? If the mother filed the notice of claim, then that would be a greater likelihood of a, of an association claim than the father filing it. But. But a greater likelihood, certainly you have an intimate association with, uh, with your child, right? Yes. You have an intimate association with your child. If you're fired, if you're fired because your child, uh, with someone else filing on his behalf, filed the lawsuit, you would certainly have an intimate association claim, right? If, if someone said to you, I'm firing you because your son, your wife filed a lawsuit on behalf of your son, you would certainly have an intimate association claim, right? I think you can concoct one from that, but I think in the, in the facts in this case, you have the, the allegations of bullying are all in relationship to the status of the parent, which is SRO status, state school resource officer status. And, um. It doesn't change who's speech it is though, right? Well, if it's a first amendment speech issue, then the speech that that's being, the retaliation is allegedly for, is again, for the actions of the, of the, of this particular parent. It's not, it's not as I. We're talking about the first, we're talking about the intimate association claim. It doesn't matter what the child is speaking about. If the child is speaking about something and you're retaliated against because of the child's speech, it doesn't matter what, there's no public concern issue related to an intimate association claim. You understand what I'm saying? Yes. The child could be speaking about anything. It could be speaking about his father. It doesn't matter, right? So it's irrelevant what the content of the speech is for an intimate association claim, right? For an intimate association claim it is. Right. Let me just ask you about the first claim because I think you would concede, I think, that motive is not determinative under our case law, right? Clearly motive, and I don't believe the judge below found motive to be determinative either. Just go through the other, the content of the speech. Again, I think you would concede, I think the district court conceded and you conceded in your briefs that bullying generally is a matter of public concern, right? The issue of bullying is, is nationwide a matter of concern to people. All right. The form of the speech, it was a notice of claim was a public document for the whole world to see. It wasn't, I know it started out with emails and conversations, but ultimately it was a public document, which would favor finding it to be a matter of public concern. You know, Your Honor, I, I don't agree with that. And I don't agree with that because a notice of claim is something filed to the school district. It's not publicized unless somebody makes a request to see it. So there is, there is no publication beyond. It's a precursor to filing a public. Certainly it's a precursor, but the question of whether it's, whether it's a public utterance. No, but it, no, what I'm saying is when you file a notice of claim, you're taking something that might be construed maybe as a private employment dispute. And you're saying, this is, I want the world to know about this, right? I'm, I'm, I'm preparing. Again, you're having a lot of experience in my life with notices of claim. I don't think they're filed to make a public utterance so that the world knows they're made as a precursor to being able to file a private lawsuit. And they are by definition, except to the fact that they go to the school district, otherwise private, unless somebody makes a FOIL request to see them. And then on the context, this had nothing to do with the father's work conditions with anything related to, it was not an employment grievance, right? This is completely outside the employment context, right? Well, it's kind of a yes and no, because the allegations in the case are that it was a bullying in response to the, to the employment status as a school resource officer of the plaintiff. Anyway, he wasn't seeking a redress with respect to, in that notice of claim, it dealt with having his son being protected. It had nothing to do with, I want this or that with a connection with my employment. It may have been, the son's issues may have been triggered by his employment, but the speech itself had nothing to do with something related to his, that he wanted related to his employment. The notice of claim did not. Right. Yeah, the action is, but the notice of claim itself wasn't seeking some lack of employment redress. Then that's, that is true. And I think that goes, the combination of those things make it a matter of public concern, I guess, is the bottom line. I don't, because it's the same situation. It's, it's a personal grievance relating to personal issues, very narrow, because it's not only just about narrowing to bullying of the son, it's bullying of the son because of the status of his father. It's clearly a, you know, a personal grievance in every sense of the word. There's nothing in this complaint, nothing in the notice of claim for that matter, that indicates any general complaint about bullying by this district. There's no allegation that the district generally does not take actions with regard to bullying. There's no allegation that anybody's ever made any statement that we accept that the district accepts bullying or won't respond. There's no allegation that the district doesn't generally respond to bullying. There's nothing that would make this a matter of public concern other than the word bullying. And it's, it's our position and of great concern that if all one has to do to raise a first amendment or petition claim is to use a magic word like, well, it's about bullying or it's about, um, remember my, my, my son going to school with a heavy backpack full of books and I couldn't believe how they make him carry it, if it's not about that, and a particular child not being able to carry his books and some claim of retaliation for a complaint about that, if, if, if that magic word is all it takes or that was kind of limited to personal grievance is all it takes, then there'll be, court will be flooded with bullying retaliation claims because it doesn't take very much then because there's nothing here that would establish any policy. And if I might, in the limited time I have left, I would like just to make a couple points. Um, in terms of this intimate association claim, one of the allegations here was that, um, somehow there's been a decision made that we're not going to have the plaintiff in school because his son's a student there. And there was, this is, there was no allegation of any kind of anti-nymptism policy of having been adopted here. There was no allegation that the district had done something irrational with regard to establishing such a policy. Um, it was, and even that allegation, that was the second cause of action of this complaint. The allegations in support of that second cause of action, which incorporated allegations before that, specifically incorporated retaliation claims. So the factual, and there's one thing that I found troubling is that the complaint at, I think it was at 36, had an allegation, um, that, uh, defendant advised plaintiff he would not be appointed as a school security officer, uh, going on to stay, uh, because, uh, his son's attendance. This, it's like this on this complaint. Nobody ever names people. There's no superintendent name. There's no board member name. In fact, the only board reference in this. Who makes hiring decisions? The board? Hiring decisions are made by the board. Yeah, but by statute, the board has to approve the hiring, right? Board would have to approve the hiring. So the decision not to hire him had to be a board decision? Not necessarily. Because the fact is, is the point I'm making is it's not clear that there was a decision made by the board to act on, to act on the original application. We don't, as you're, as the Court has noted, we don't know who allegedly made that, did that. I understand that, but that, that's because nobody, that may be a fact that the plaintiff doesn't have. Of course, the plaintiff didn't ask, didn't allege that there were facts that he or she, that he, me, could flesh out his complaint and didn't ask for it. Well, the plaintiff. Let me finish. I'm sorry. I apologize. The opportunity to replete, so we don't know, but you're saying it's not a plausible inference and the complaint is currently constructed that this was a board decision? It's a leap. And this, and I mean, we don't even know who the defendant references in 36. It's like. And you're adding that the board would not have to decide not to hire someone. That's true. That's true. There is a reference in paragraph 21 to the plaintiff waiting for board approval, uh, though it's scheduling, but that, that is, there is one reference in the complaint. Right. A reference made by apparently another school resource officer. I don't know where that takes us. It's not, it's not a, it's not a reference made even by an official of the district. It would have to be inferred by operation of the education law that the board, right? Makes employment decisions by, by operation of the law, right? Board makes employment decisions. So of course, in this case, there's an allegation and it's somewhat reflected by the, by the record you have in front of you, that it might be the superintendent of schools who would have, who would have to at least make the recommendation to the board. So is it, was this a Mac action by the superintendent, somebody below the superintendent? Either one would be a policymaker though, right? The superintendent would be a policymaker. Well, for, for final hiring, the superintendent wouldn't be, but, but nothing needs, no, there's no allegation. There's no identification of anybody except a school resource officer and a, uh, a security director. These are people whose actions do not establish policy. And the complaint actually in one place mentions the board about the board president not approving a transfer, which is not a basic allegation in support of any of the claims here. So, and this is the kind of cases that where motions to dismiss are made because it's just, it's just this conclusory allegation in the end that, well, it's a policy or practice, or there was a policymaker without identifying anyone. I, I don't know if I'm on overtime or what I think I am. Thank you. All right. Just let me address two matters. And then obviously if any questions, I'll try to deal with those. Mr. Rushfield says that it would be of great concern and would stimulate much litigation if the court held that where a parent makes a complaint of bullying and is then, and is then subject to adverse action by a school district, that would open a flood gate of litigation. I've been doing this work for 40 years. Frankly, this fact pattern, I have never seen this fact pattern before. I'm not sure that holding that way would open a flood gate of cases of any sort. I mean, that's to suggest that school districts somehow routinely engage in retaliation against parents and have that, even that opportunity when the parent has issued a complaint, the notice of claim. I mean, that, that just strikes me as, I mean, I know we have horribles to always be concerned about an extending precedent, but I don't think that is a plausible statement. I just, I think that's rhetorical and should be discounted. Second of all, my client, as the complaint makes clear, went through a hiring process that lasted a number of months. He went through a civil service list. He was on an eligible list. He was number six on the list. People were taken from that list, as was shown, given appointments on a provisional basis. Then there were two individuals who were appointed to the position by the board. He was a qualified person who alleges that those individuals had less qualifications than he did. That's what's in the complaint, and was passed over because he was told he would not be hired because his child was, in fact, in the school. My client doesn't know exactly, and this goes to Judge Wesley's point about discovery, he doesn't know exactly who made the decision, but he knows it was made at a high level because he was told by not any other security guard, but by the head of security, Mr. Waltman, about his status. And Mr. Waltman is so identified. So I don't think this argument that it's so nebulous as to merit a motion to dismiss is warranted. Thank you very much. Thank you. Mr. Wallman was an SRO himself, not the director of security. We have the complaint before us. And thank you both. Nicely argued. Thank you, gentlemen. Thank you.